OF THE

# SUPREME COURT OF THE STATE OF FLORIDA,

AT

## FEBRUARY TERM, 1857,

## HELD AT JACKSONVILLE.

———•─◄◆►•———

R. DORMAN, APPELLANT, vs. THE JACKSONVILLE AND ALLIGATOR PLANK-ROAD COMPANY, APPELLEE.

The main points in this case have been ruled in Barbee vs. the same Company and have been approved and confirmed.

It is not competent for a defendant in an action of assumpsit to anticipate the production of an agreement and complain of it as invalid on account of its heading and the like ; this objection may be made on the general issue.

It is not a good plea in bar, in a case of this kind, that the Company let off other Stockholders or forfeited their Stock without payment, nor that the work is abandoned ; if there is a remedy and wrong it must be sought elsewhere than in a defence to this action.

It is improper to reiterate and repeat defences, and a course of this kind should be checked by the Circuit Judge by refusing to receive them or allow them to be filed.

Appeal from the Circuit Court of the Eastern Circuit for Duval County.

This was an action of assumpsit instituted by the appellee against the appellant, to recover an amount subscribed to the Capital Stock of said Company.

The declaration contains twelve counts. The first six counts were over-ruled on demurrer and stricken out.

The seventh count alleges "that on the first day of March, 1851, the plaintiffs were a body corporate, duly chartered

34

by the Legislature of the State of Florida, and being such body corporate a book of subscription to the Capital Stock of said Company was afterwards, to-wit: on the day and year aforsaid, opened at Jacksonville, and the defendant on the same day subscribed for three shares of the Capital Stock of said Company, of one hundred dollars each; by means whereof the said defendant became and was a stockholder in the said body corporate, and owner of three shares of the Capital Stock thereof; and afterwards on the same day and year aforesaid, and in consideration of the said three shares of the Capital Stock of said Company, the said defendant made and executed a promise or agreement in writing, and delivered the same to the plaintiffs by which he the said defendant undertook and promised to pay to the Treasurer of the said plaintiffs the amount of three hundred dollars for the said three shares of Stock, in such amounts and at such time or times as might or should be required by the Directors of said Company. And the plaintiffs aver that on the ninth day of June, 1853, the Directors of said Company required twenty per cent. or sixty dollars of said amount to be paid on or before the fifteenth day of August then next ensuing; by means whereof the said defendant became liable to pay to the said plaintiffs the said sum of sixty dollars, and being so liable he, the said defendant, in consideration thereof afterwards on the same day and year last aforesaid, undertook and faithfully promised the said plaintiffs well and truly to pay them the said sum of money, in this Count mentioned, whenever he should be thereunto afterwards requested."

The eighth, ninth and tenth counts were the same as the above, except that they aver other and additional calls upon the capital stock, of twenty per cent. each, payable at different times.

The eleventh count alleges " that on the first day of No-

vember, 1854, the said defendant had subscribed for three shares of the Capital Stock of the said plaintiffs of one hundred dollars each, the said plaintiffs being then and there a body corporate, duly created and established by act of the Legislature of the State of Florida ; and in consideration of which said three shares of Capital Stock the said defendant had before that time undertaken and promised to pay to the said plaintifis the sum of one hundred dollars per share, in such amounts and at such times as might be required by the Directors of said plaintiffs ; and the Directors of the said plaintiffs had required the said sum of one hundred dollars per share for the said three shares to be paid in five instalments of twenty per cent. each, payable respectively on the first day of June, the fifteenth day of August, the first day of November, 1853, and on the first day of September, and the first day of October, 1854 ; by means of all which premises, the said defendant had become liable to pay to the said plaintiffs the said sum of three hundred dollars.  He, the said defendant, in consideration thereof on the day and year aforesaid undertook, and faithfully promised the said plaintiffs well and truly to pay them the said sum of three hundred dollars whenever he should be thereunto afterwards requested."

The twelfth count is in the form of the general indebitatus count.

Attached to the declaration is a bill of particulars, as follows, viz :

R. Dorman,

To Jacksonville and Alligator Pland-Road Co., Dr., 1853.

June 1—To 20 per cent. on —— shares,........$60 00
Aug.15— "  "   "   "              ."    ........ 60 00
Nov. 1— "  "   "   "              "    ........ 60 00
1854.
Sept. 1— "  "   "   "              "    ........ 60 00

Oct.   1—To 20 per cent. on —— shares,........ 60 00
Nov.   1— " amount of subscription for stock,....300 00
   "    "— "     "     due on calls,................300 00

                                          $900 00

Annexed to the declaration appears a copy of a paper, as follows:

" The books of subscription to the Capital Stock of the Jacksonville and Alligator Plank-Road Company will be opened at the Store of Fernandez, Bisbee & Co., in Jacksonville, and at the Store of S. L. Niblack & Co., in Alligator, on Saturday the first day of March next, and will be opened until the whole stock is taken. In behalf of the Commissioners.        S. D. FERNANDEZ, Com'r.

"January 30, 1851."

" This being the stock book required to be opened at the Store af Fernandez, Bisbee & Co., in accordance with the above notice, we the undersigned do severally hereby agree to subscribe the amount of stock opposite our names in the Jacksonville and Alligator Plank-Road Company; and we do further agree and bind ourselves severally to pay to the Treasurer of said Company the amount of stock hereunto subscribed and taken, in such amounts and at such time or times as shall or may be required by the Directors of said Company."

| Names of Stockholders. | Number of Shares. | Amount |
|---|---|---|
| R. Dorman, | 3 | $300." |

The defendant demurred to the seventh, eighth, ninth and tenth counts, and assigned the following as causes of demurrer:

1st. It is therein claimed that the plaintiffs were a body corporate before the defendant subscribed (and which statement is believed to be contrary to truth, and therefore assigned as an additional cause of demurrer) to the stock

and are called the plaintiffs, and at the same time it is alleged that the defendant by such subscription became a stockholder, and consequently one of the plaintiffs, which would seem to be inconsistent.

2nd. Because a written agreement is therein alleged to have been made by the defendant, to the Company, after such subscription to stock. No such written agreement nor any copy thereof is attached to the declaration in this cause as required by law.

3rd. No sufficient cause of action is set out in said counts.

4th· Such cause as is therein alleged is not sufficiently set out therein to charge this defendant.

5th. The word defendants is used for defendant, and divers other causes.

6th. Said counts allege plaintiffs were a body corporate before the books of subscription were opened and any of the plaintiffs had subscribed for stock.

The defendant also demurred to the eleventh count, assigning the following causes of demurrer:

1st. There is no sufficient cause of action set out in said counts.

2nd. The cause of action therein alleged is not therein sufficiently set out to charge this defendant or to require him to plead and defend himself against the same.

3rd. The word defendants is used in said count instead of defendant.

The defendant also demurred to the twelfth count, assigning the following causes of demurrer:

1st. That there is no sufficient cause of action set out in said count, and it is multifarious and double.

2nd. The causes of action therein named are not sufficiently set out and declared upon.

3rd. As appears by said count there is not necessarily

any liability on the part of defendant to pay the money therein named.

4th. It alleges that defendant was indebted to plaintiffs for moneys due and payable, which is too general and indefinite, and not sufficient to charge dafendant for anything.

The defendant also demurred generally to the declaration, assigning as causes of demurrer—

1st. There is no sufficient count in said declaration by which to charge defendant on any promise and undertaking he may have made. Each and every of said counts is very imperfect, informal and in many respects incomprehensible and not to be believed.

2nd. Said declaration is needlessly long, making it onerous to defendant to plead to and defend himself against it.

3rd. Said declaration is not properly entitled in this Court.

4th. The bill of particulars is not sufficiently exhibited and tends to confound and confuse rather than inform what is demanded.

5th. The declaration charges the defendant with being a stockholder in said Company, and as such he is a party plaintiff as well as defendant, and cannot as such be compelled to answer in a suit at law.

6th. Because the act of incorporation of said Company provides a remedy against a non-paying stockholder, to-wit: the forfeiture of his stock.

7th. The book of subscription alleged to have been subscribed by defendant is not attached to the declaration.

The demurrers of the defendant aforesaid were over-ruled by the Court, to which he excepted.

The defendant pleaded under oath—

1st. That the writing or agreement annexed to the declaration is not his act and deed.

2nd. "That he is not aware of, nor does he believe or admit that the said instrument of writing or pretended agreement is a copy of any undertaking or agreement of this defendant, but this defendant believes and will admit that he, with others, subscribed his name in a book which he supposed and supposes, and it was so represented to defendant by the person in charge thereof, to have been a book of subscription, authorized by the act of incorporation of said company, to be opened at Jacksonville for that purpose, for three shares of stock in the said Company, and by such subscription incurred such liability, and only such liability as such subscription taken in connection with such act of incorporation imposed on him, but he denies that he incurred any greater or other or different liability by such subscription, in consequence of the act of the Commissioners or any of them, or any of their agents placing any heading at the beginning of said book of subscription, or elsewhere unknown to defendant, and unauthorized by the act of incorporation of said Company. And defendant further says he was and is ignorant of the heading at the beginning of said book of subscription, if there is any such heading, and he believes and alleges such act was entirely unauthorized and of no effect, and defendant's liability as he believes and alleges, was in no wise changed or altered, or increased by such act; and this he is ready to verify," &c.

3rd. "That he subscribed as he supposed for three shares of stock in said Company in (what he took to be and was so represented, and what he supposes is, and nothing more) a book of subscription, authorized by the act of incorporation of said Company, and that by doing so he incurred thereby such liability and responsibility as is imposed for such act, by the said act of incorporation, but no other or greater liability or responsibility in consequence of any unauthorized (by said act of incorporation) act of any com-

missioners or their agents, in placing any heading or form of an agreement at the head of said list or book of subscription, and he says that he was and is entirely ignorant of such agreement as is alleged (other than the simple subscription as aforesaid) and was not, and is not aware of having executed such agreement, as is alleged. And he further says that as such subscriber to the said stock of said Company, he paid the first instalment on said three shares of stock called for by the Board of Directors of said Company, which was twenty per cent. on the said three shares of one hundred dollars each, or sixty dollars for said three shares. And that subsequently to such payment of the said first instalment, so called for by said Directors of said Company, further instalments were called for by the Board of Directors of said Company, and notices of such calls and for such payment of such subsequent instalment, and instalments were published in a public newspaper in Jacksonville, for the length of time required by the act of incorporation, and the defendant failed and neglected to pay such subsequent instalment and instalments; by means whereof, and by virtue of the said act of incorporation, his (the defendants) said stock and the previous payment and payments which defendant had made on account of said stock, became and were forfeited to the said Company, and the defendant was no longer, from that time, a stockholder of said Company, and the consideration for any further or other payments, and for any other and further demand against this defendant on account of said stock and of his said subscription as aforesaid for the same, has wholly and entirely failed, as he alledges he is advised and believes; and this he is ready to verify," &c.

4th. "That if there is really any such instrument of writing as that stated in the declaration and attached to the same, such agreement was and is unknown to the defen-

dant, and it was an entirely unauthorized and unwarrantable act, as he believes and alleges on the part of the Commissioner or Commissioners or their agents; and if by the same any greater, other and further liability would be and was incurred by the subscribers aforesaid, in consequence thereof, such act was and is a fraud in law on this defendant and other subscribers (in said book) ignorant of the same, and therefore entirely null and void; and if of any force and effect whatever, it renders the subscription also null and void ; and this he is ready to verify," &c.

The plaintiffs demurred to the said pleas of defendant, which demurrer was over-ruled as to the first, and sustained as to the others, and leave was granted to defendant to plead over instanter.

The defendant then filed under oath the following amended pleas:

1st. "And for a further plea, the defendant says that the heading or alledged agreement at the beginning of the book of subscription of the said Plank Road Company, is not his agreement, for the reason that when this defendant subscribed for stock in the book of subscription of said Company, he was not informed of, nor was he aware of said heading or alledged agreement, nor has he since then acknowledged the same; and this the said defendant is ready to verify."

2d. "And for a further plea, the said defendant says :— this defendant subscribed simply for stock in the book of subscription of said Company, as authorized by the Act of incorporation of said Company, without executing the agreement or form of an agreement at the head of said book of subscription ; and defendant paid the first instalment (on account of said subscription) called for by the Board of Directors of said Company.   But this defendant failed to pay

35

any subsequent instalment, and by force of the said Act of incorporation of said Company, this defendant's said stock subscribed in said Company, and the previous payment which he had made thereon, became and was forfeited to the said Company ; and this he is ready to verify."

3d. "And for a further plea, the defendant says that the consideration for this defendan'ts said stock and subscription in said Company, has wholly and entirely failed for these reasons, viz :

" That this defendant subscribed simply for stock in said Company, without executing the alledged agreement at the head of said book, and paid the first instalment on said stock, but wholly and entirely failed to pay any subsequent instalments, although subsequent instalments were called for by the Directors of said Company, and notice of such calls were given ; by reason whereof and by force of the said Act of incorporation of said Company, this defendant,s stock in said Company and the previons payment which he had made on said stock, became and were forfeited to said Company ; and this he is ready to verify."

4th. "And for a further plea in this behalf, this defendant says that when this defendant subscribed in the book of subscription of said Company for stock, he was not informed of, nor was he aware of the heading or form of an agreement at the head of said book (or list) of subscription, and the same was a fraud on him; and this he is ready to verify."

The following additional pleas were afterwards filed :

5th. " And the defendant for a further plea, says that he did not undertake and promise in manner and form as the plaintiffs have in their declaration complained against him; and of this he puts himself upon the country."

6th. "And for a further plea, the defendant says that the Board of Directors of said Company (nor the plaintiffs) have never called for and demanded from this defendant the

Dorman vs. The Jacksonville & Alligator P. R. Co.—Statement of Case.

instalment and instalments on the said stock, as required by the Act of incorporation of said Company, as they were required to do before defendant was liable to pay any instalment declared for in said declaration; and this he is ready to verify."

"7th. "And for a further plea, the defendant says that the plaintiffs have let some of the stockholders of said Company off, and declared the stock, for which they had subscribed, forfeited, without any payment whatever having been made on the same, and they have let off and settled with others of said stockholders on a partial payment, which this defendant avers they cannot legally do, and still hold, require and enforce payment from this defendant; and this he is ready to verify."

8th. "And for a further plea in this behalf, the defendant says that the said plaintiffs have abandoned their undertaking of building and constructing the said Plank Road according to the said Act of incorporation of said Company; and this he is also ready to verify."

The plaintiffs demurred to the first, seventh and eighth pleas, moved to strike out the second, third and fourth on the ground that the same in substance have already been overruled, and also moved to strike out the affidavit to the same, as not being authorized by law. To the fifth plea plaintiffs joined issue, and to the sixth replied that plaintiffs have called for and demanded the instalments of stock as required by law.

The Court, on argument, granted the motion to strike out the second, third and fourth amended pleas, and sustained the demurrer to the first, seventh and eighth pleas.

By leave of the Court the defendant afterwards filed the following additional pleas, viz:

"And for a further plea, the defendant says that the heading or alledged agreement at the beginning of the book

of subscription of the said Plank Road Company, is not his agreement, for the reason that when the defendant subscribed for stock in the book of subscription of said Company, he was not informed of, nor was he aware of said heading or alledged agreement; and this he is ready to verify."

"And for a further plea, the said defendant says, this defendant subscribed simply for stock in the book of subscription of said Company, without executing the agreement or form of an agreement at the head of said book of subscription, in accordance with the foregoing plea, and defendant paid the first instalment (on account of said subscription) called for by the Board of Directors of said Company, but this defendant failed to pay any subsequent instalment and instalments called for and demanded by the Board of Directors ; by reason of which said failure to pay, and by force of the said Act of incorporation of said Company, this defendant's said stock for which he had subscribed in said book of subscription of said Company, and the previous payments which he had made thereon became and were forfeited to the said Company; and this he is also ready to verify."

"And for a further plea, the defendant says, that when this defendant subscribed for stock in the book of subscription of said Company as aforesaid, he was not informed of, and was not aware of the heading or form of agreement at the head of said book of subscription, by reason whereof, the defendant avers that the same was a fraud in law on this defendant ; and this he is also ready to verify."

"And for a further plea, the defendant says that the plaintiffs have let off some of the stockholders of said Company, and declared their stock in said Company forfeited without their having made any payment whatever on the same, and which this defendant avers they could not legally do and still hold this defendant bound and require and en-

force payment from this defendant; and this he is ready to verify."

"And for further plea in this behalf, the defendant says that the plaintiffs have let off and settled with some of the stockholders of said Company, on a partial payment only of the amount for which they had subscribed, and which this defendant avers they cannot legally do and still hold this defendant bound, and require and enforce payment in full from this defendant; and this he is ready to verify."

The plaintiffs demurred *ore tenus* to these additional pleas, which demurrer was sustained by the Court.

On the trial, the plaintiffs offered to introduce in evidence the book of subscriptions of the Jacksonville and Alligator Plank-Road Company, to which defendant objected on the ground of variance between the said evidence and the bill of particulars filed with the declaration, and also on the ground of variance between said evidence and the causes of action set out in the declaration. But the Court overruled said objections, and defendant excepted. Plaintiffs then read in evidence the said book of subscription, which is the same as the paper-attached to the declaration purporting to be a copy, except that it contained other names besides that of R. Dorman, which alone appears in the said paper attached to the declaration as aforesaid.

The defendant asked the Court to charge the jury—

1st. That under the plea of *non est factum* under oath in this case, it is necessary that the plaintiffs should prove that defendant did execute the agreement charged against him; given by the Court.

2d. And that under this plea, it is necessary for plaintiffs to prove that defendant was aware of the heading or agreement at the beginning of the book of subscription when he subscribed for stock in the said book; given by the Court with the following addition, viz:

But if you believe from the evidence that said **Dorman** signed said agreement to take said stock, as read in evidence, this is *prima facie* that he was aware of said heading, and it is incumbent upon the defendant to show he was not aware of it.

3d. And unless the jury believe the defendant was informed of said heading or agreement, or was aware at the time he subscribed, or subsequently acknowledged the same in some way, the jury should find for the defendant in that plea ; given with this addition, viz :

If you believe that said defendant signed and executed said agreement, this is *prima facie* evidence he was informed of the heading, and it is incumbent upon said defendant to show he was not informed of said heading.

4th. If the jury, from the evidence, believe that instalments were called for and demanded from defendant on account of said stock, and the defendant did not pay them after due notice thereof, his stock on account of said subscription became forfeited under the Act of incorporation of the Company, and defendant was not liable to pay any more ; refused by the Court.

A verdict and judgment being rendered for plaintiffs, defendant apppealed.

R. Dorman, *pro. per.*

*G. W. Call,* for appellee.

BALTZELL, C. J. delivered the opinion of the Court.

This is a suit instituted to recover instalments for stock alleged to be due to this Company.

Defendant demurred to the 7th, 8th, 9th, 10th, 11th and 12th counts of the plaintiffs' declaration, but the Court adjudged them sufficient, and this ruling presents the first question for the consideration of the Court.

The seventh count objected to, is a specimen of the others, and its disposition will avoid the necessity of treating each of them separately. It alleges "that on the 1st of March, 1851, the plaintiffs were a body corporate, duly chartered by the Legislature of the State, and being such body corporate, a book of subscription to the Capital Stock of said Company was afterwards opened, and the said defendant subscribed for three shares of the Capital Stock of said Company, of one hundred dollars each ; by means whereof the said defendant became and was a stockholder in said body corporate, and in consideration of said three shares, the said defendant made and executed a promise or agreement in writing and delivered the same to said plaintiffs, by which he promised to pay to the Treasurer of said plaintiffs the amount of three hundred dollars for the said three shares of stock, in such amounts and at such times and places as should be required by the Directors of said Company, and said plaintiffs aver that on the 9th of June, 1853, the Directors of said Company required twenty per cent., or sixty dollars of said amount, to be paid on or before the 15th of August next ensuing."

In the case of Barbee, vs. the same Plank-Road Company, 6 Florida, 265, the validity of a declaration based upon an engagement of the like kind with that of the present defendant, was before this Court. It is true the principal objection there, was to the constitutionality of the law, yet other points were raised, and the sufficiency of the declaration was directly presented and adjudicated. Nor do we see any reason to doubt the propriety of the decision then given. It is very true if a point material to the case of the defendant had been passed without notice, or even if a question then made had been erroneously decided, we should feel bound, on being satisfied in this respect, to give him the benefit of the new light, and to correct the error. But we

see nothing in the new points presented to raise a doubt as to the correctness of the former adjudication.

The decision of the Court is excepted to in sustaining the 3d, 4th and 5th dilatory pleas. These assert "that the heading to the book of subscription of stock, was unknown to defendant, and unauthorized by the Act of incorporation, and he was ignorant of the said heading, and believes it was entirely unauthorised," &c. This is certainly a novel mode of raising an objection of the kind. The plaintiffs had not declared upon a specific subscription in writing with any particular heading, nor attached any such to their declaration. The allegation as we have seen, was that defendant became the purchaser of three shares of stock for which he agreed to give three hundred dollars. Now the true point in issue was as to this engagement, and his plea of the general issue enabled him to set up and shew the precise nature, extent and character of his engagement, without regard to plaintiffs' proof; and if this heading, made against his consent, being a part of the agreement, changed it any degree, it certainly was competent for him to prove it, and with such proof to sustain his defence. But it is by no means competent in this action for a defendant to anticipate a portion of the plaintiffs' testimony, raise an issue upon it, and assail it in this manner. Besides, it is not alleged how and in what respect this heading altered the engagement as actually made—to what extent it was effected by it, so as to enable the Court to judge of the injury complained of. We see nothing then to satisfy us that the Court erred in the decision made as to these dilatory pleas.

The next assignment of error is that the Judge over-ruled the demurrer of plaintiff to the second dilatory plea of defendant. This may be ground of exception by plaintiff; it is difficult to perceive how defendant was damnified by a decision thus made in his favor.

The next objection is that the Court sustained the plaintiffs' demurrer to the first amended plea, and struck out the 2d, 3d and 4th amended dilatory pleas. This first amended plea is but a reiteration of the previous ones as to the heading of the agreement, and is obnoxious to the objections already stated.

The second and third amended pleas set up a failure to pay the instalments, by reason of which failure and the Act of incorporation of the Company, the defendant's stock became forfeited, and therefore that he is not liable to make further payment. The point raised by these pleas was fully considered by the Court in the the case of Barbee, already cited, page 297, so that this ruling of the Court was not improper. The 4th amended plea reiterates the subject of the heading of the subscription paper already alluded to.

Complaint is made of the Court's overruling the 7th and 8th pleas in bar, the first of these alleging that the plaintiffs let off and declared the stock of other stockholders forfeited, without any payment, and settled with others on a partial payment. It is scarcely necessary to say that this forms no ground of discharge or satisfaction of defendant's obligation. If wrong has been done in this respect, the injury may be repaired by the Directors or injured stockholders, or by legal action, and not by a renewal of the wrong by this Court.

The eighth plea overruled by the Court, alleges that the plaintiffs have abandoned their undertaking of building and constructing the said Plank-Road according to the said Act of incorporation. Conceding that the Company have arrived at the conclusion not to prosecute the work of constructing a road such as was designated, it by no means follows, as we conceive, that their contracts and engagements are thereby at an end and abrogated. Very clear-

36

ly, debts due by the Company to other individuals for work and service rendered the Company are not abrogated, and their own ability to discharge these may be dependent upon their realizing from the claims due by their own debtors. If all the *debts* due by the corporation were *settled and adjusted*, even then the legal consequence would not rightfully follow, for one or a few stockholders may have paid all their subscriptions and advanced means, wh'lst others may have paid none and thereby defeated the undertaking.   To acquit and discharge the latter, would be to offer a premium to wrong—to tempt those who entered upon these undertakings to seek the means of evasion and of escape from a just responsibility.

A Court of Chancery on being satisfied that the Stockholders had paid an amout equal to their engagement, so as to make the burthen equal amongst them all, might interfere, in case of abandonment of an undertaking, to prevent further calls ; but in a Court of Law we are clearly of opinion that the defence as set up here is not sustainable. Such a state of things if true, might work a forfeiture of the Charter, but its truth could only be tried by proper proceedings instituted against the Corporation, in which proceedings the issue could be made.   So long as the Corporation exists, it has a right to sue for and recover its lawful demands. In Angell & Ames, on Corporations, page 575, *it is said*, in treating of suits by Corporations—"Neither can it be shown " in defence that the plaintiffs have forfeited their corpor- " rate rights by misuser or nonuser.   Advantage can only " be taken of such forfeiture on process in behalf of the " State, instituted directly against the Corporation, for the " purpose of avoiding the Charter or Act of Incorporation. " And individuals cannot avail themselves of it in collater- " al suits until it be judicially decided." Citing numerous cases, note 2.

Again on page 746, the same doctrine is laid down in different words : " A cause of forfeiture cannot be taken advantage of or enforced against a Corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the Corporation, so that it may have an opportunity to answer." Citing authorities, note 1.

There are five other pleas asserting the same defence as to the heading of the subscription, the forfeiture of the stock, letting off the subscribers, to which demurrers were sustained. Of these we have this to say, that the Court should not have ·permitted them to be filed, as the same questions presented in almost the identical language had been just determined. The Court owed it to itself—to its own dignity and character—to reject such effort to repeat and renew and reiterate the same defence. The most that a party can reasonably expect, is to have his defence adjudged and decided ; when this is done his duty is to submit.

On the trial of the case the plaintiff offered in evidence, the book of subscription of the Jacksonville and Alligator Plank-Roak Company, which was objected to on the ground of variance between it and the bill of particulars. We are wholly at a loss to percieve the variance alluded to. The bill of particulars is, for amount of subscription, $300; June 1, 1853, to 20 per cent. on shares, $60 ; August 5, 20 per cent. on shares, $60 ; November 1, to 20 per cent. on —— shares, $60. The subscription is, "we agree to pay to the Treasurer of the Company the amount· of stock hereto subscribed, in such amounts and at such times as shall be required by the Directors of the Company." The variance alleged in the brief is that there is a single name attached to the bill of particulars, whilst there are many to the agreement. It is scarcely necessary to say that this does not reach the form of an objection, much less the substance of one.—

The defendant moved the Court to instruct the jury, " that it was necessary for plaintiffs to prove that defendant was aware of the heading or agreement at the beginning of the book of subscription when he subscribed for stock in the said book. This was obviously improper and should not have been given. With the same propriety a party having a note might be required to show that the part of the instrument preceding the signature had been written previous to the signing. The Court, instead of rejecting it absolutely, gave a qualified instruction going as far in favor of defendant as he had a right to expect. So another, the third instruction, to about the same effect, was asked and refused with the qualification. The other instruction refused, was as to the forfeiture of the stock, which we have already stated, has been sufficiently adjudicated by this Court.

We then find no error in the ruling or adjudication of the Court below, and the judgment is therefore affirmed with costs.